UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERLA OLIVIA GARCIA,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Case No.:  15cv2652 BTM (BLM)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS** |

In this action, Plaintiff Perla Olivia Garcia seeks review of the Commissioner of Social Security's denial of her application for a period of disability and disability insurance benefits. (ECF No. 1.) Plaintiff and Defendant have filed cross-motions for summary judgment. (ECF Nos. 11, 14.) For the reasons discussed below, the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendant's motion for summary judgment.

## I. PROCEDURAL BACKGROUND

On March 26, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act, alleging disability beginning November 18, 2011. (Administrative Record ("AR") 133-36.) Plaintiff's claim was denied initially on October 4, 2012, and upon reconsideration

on February 22, 2013. (AR 67, 75.)

On March 26, 2014, Plaintiff's claim was heard by Administrative Law Judge Levine (the "ALJ"). (AR 29-45.) On June 19, 2014, the ALJ issued a decision denying benefits. (AR 13-28.) Plaintiff filed a request for review with the Appeals Council, which was denied on October 15, 2015. (AR 1-4.) The ALJ's decision then became the final decision of the Commissioner of Social Security. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II. ALJ'S FINDINGS AND CONCLUSIONS

The ALJ conducted the five-step sequential analysis set forth in 20 C.F.R. § 404.1520.[1]

At the outset, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. (AR 18)

The ALJ then found that Plaintiff had not engaged in substantial gainful activity since November 18, 2011—the alleged onset date. (AR 18.)

Next, the ALJ found that Plaintiff had the following severe impairments: anxiety disorder and depressive disorder (20 C.F.R. § 404.1520(c)). (AR 18.)

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

---

[1] Under the Social Security Regulations, the determination of whether a claimant is disabled within the meaning of the Social Security Act is a five step process. The five steps are as follows: (1) Is the claimant presently working in any substantially gainful activity? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step two. (2) Is the claimant's impairment severe? If not, then the claimant is not disabled. If so, then the evaluation proceeds to step three. (3) Does the impairment "meet or equal" one of a list of specific impairments set forth in Appendix 1 to Subpart P of Part 404? If so, then the claimant is disabled. If not, then the evaluation proceeds to step four. (4) Is the claimant able to do any work that she has done in the past? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step five. (5) Is the claimant able to do any other work? If not, then the claimant is disabled. If, on the other hand, the Commissioner can establish that there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520. See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 18.)

At step five, the ALJ determined that the Plaintiff had the residual functional capacity to perform a "full range of work at all exertional levels with the following nonexertional limitations: the claimant must work in a nonpublic setting and the claimant cannot have intense, sustained interactions with coworkers and supervisors." (AR 19.)

Based on the testimony of the vocational expert, the ALJ found that Plaintiff is capable of performing past relevant work as a home attendant and a day worker. (AR 23.)

Therefore, the ALJ concluded that Plaintiff has not been disabled, within the meaning of the Social Security Act, from November 18, 2011, through the date of the decision. (AR 24.)

### III. STANDARD

The Commissioner's denial of benefits may be set aside if it is based on legal error or is not supported by substantial evidence. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance. Id. Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995). A denial of benefits must be upheld if the evidence could reasonably support either affirming or reversing the ALJ's decision. Robbins v. Social Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

### IV. DISCUSSION

Plaintiff argues that the ALJ failed to properly consider the lay evidence in the record—including the Plaintiff's testimony—as well as the opinions from Plaintiff's treating physicians. Plaintiff also argues that the decision overall is not

supported by substantial evidence. For the reasons set forth below, the Court finds that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony.

### A.     Credibility Determination

#### 1.    Plaintiff's Testimony

Plaintiff testified before the ALJ in March 2014. Plaintiff testified that she first stopped working following an "injury" in late 2011. (AR 35.) Plaintiff stated that she was working for someone as a caregiver, but her patient allegedly verbally abused her causing a panic attack. (AR 36.) Following the panic attack, Plaintiff testified that she could not walk for a month. (AR 36.) When she attempted to return to work as a caregiver, Plaintiff testified that she had to stop because she continued to remember her previous patient that allegedly verbally abused her. (AR 40.)

Plaintiff also testified that she had been attending college for three years prior to the injury. (AR 33.) Although Plaintiff stated that she stopped going to college following her injury, she received a doctor's note in December 2012 stating that Plaintiff should take some time off from school during the spring semester to focus on her mental health. (AR 33, 272.) Plaintiff testified that she was currently enrolled in an online course. (AR 39.)

Plaintiff testified that she like to walk "to relieve [her] pain," and likes in general "just to be alone." (AR 38.) When she is not walking, Plaintiff testified that she likes to be in her room, either thinking or sleeping. (AR 39.) Plaintiff mentioned that she used to walk with her friend, Ms. Andrade, but because of Ms. Andrade's work she had not been walking with her frequently. (AR 38.)

//
//
//
//

## 2. ALJ's Credibility Determination

### *(a) Legal Framework*

An ALJ engages in a two-step analysis when assessing the credibility of a claimant's symptom testimony. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). First, the ALJ "must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (citing Vazquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009)). When the claimant has presented such evidence, and the case lacks evidence of malingering on behalf of the claimant, the ALJ may reject a claimant's testimony regarding the severity of her symptoms only if the ALJ "makes specific findings stating clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996).

An ALJ is not required to accept as true every allegation of disabling pain by the claimant. See Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007). In evaluating the claimant's testimony, the ALJ may consider inconsistencies between the claimant's testimony and conduct, unexplained or inadequately explained failure to seek or follow medical treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. Molina, 674 F.3d at 1112. The ALJ's rationale must contain a "thorough discussion and analysis of the objective medical evidence and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations." SSR 95-5P, 1995 WL 670415, at *3 (Oct. 31, 1995).

In general, Plaintiff argues that the ALJ failed to give adequate reasons for discrediting Plaintiff's symptom testimony. Specifically, in finding that Plaintiff's subjective complaints were "less than fully credible," the ALJ provided reasons based on Plaintiff's daily activities, her failure to take medication, and the objective medical evidence.

//

### *(b)   Daily Activities*

In general, activities of daily living are relevant to the ALJ's credibility determination. 20 C.F.R. § 404.1529(c)(3)(i). However, the mere fact that a claimant has carried on certain daily activities does not in any way detract from her credibility as to her overall disability. See Vertigan, 260 F.3d 1044, 1050 (9th Cir. 2001). "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

In his decision, the ALJ stated that Plaintiff, "admitted activities of daily living including personal care, attending college and household chores. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (AR 21.)

Plaintiff argues that the ALJ misconstrued Plaintiff's college attendance by stating that Plaintiff had attended college after her alleged disability onset date. The ALJ concluded in his decision that Plaintiff "attended school prior to and after her alleged onset date." (AR 21.) Accordingly, the ALJ determined that:

> Although that activity does not negate disability, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. Further, this activity demonstrates that the claimant was able to commute to and from school, attend classes with other students and work toward her education goals. This activity is inconsistent with a claim of disabling mental impairments.

(AR 21.)

At the hearing, Plaintiff stated that she was attending college up to and including November 2011, but needed to "drop the class because I got ill." (AR 32.) Plaintiff also testified that she had been attending college for three years prior to November 2011. (AR 32-33.) The ALJ also referenced a doctor's note which

opined that Plaintiff should not attend classes in the spring 2013 semester in order to focus on her mental health. (AR 33, 272.)

Here, the record is not clear as to whether or not Plaintiff attended college following her alleged disability onset date. Specifically, Plaintiff testified that she stopped attending classes after she "got ill." Although the doctor's note recommends that Plaintiff refrain from attending classes in the spring 2013 semester, the record does not establish that Plaintiff was taking classes in the spring 2012 or fall 2012 semesters. Defendant notes that Plaintiff attempted taking online classes in March 2014. (AR 340.) However, the ALJ noted the importance of "commut[ing] to and from school, attend[ing] classes with other students and work[ing] toward educational goals" as evidence that Plaintiff's daily activities were inconsistent with her alleged disabling impairments. Taking online classes does not involve the aspects of in-person college classes that the ALJ relied on in his decision. Rather, the isolation associated with online courses is consistent with Plaintiff's alleged disabling impairments.

The Court agrees with Plaintiff that the ALJ improperly concluded from an incomplete record that Plaintiff attended college after the alleged onset date. Accordingly, the ALJ improperly concluded that Plaintiff's daily activities involved transferrable skills.

### *(c) Failure to Take Medication*

An ALJ may not "draw an adverse reference from a claimant's failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits . . . ." SSR 96-7P, 1996 WL 374186 (July 2, 1996). Here, the ALJ stated that "[t]he treatment records show the claimant failed to comply with prescribed medication. . . . This demonstrates a possible unwillingness to do that which is necessary to improve her condition. It may also be an indication that her symptoms are not as severe as she purports." (AR 21.)

Although the treatment records demonstrate that Plaintiff stopped taking her medication at certain times, the ALJ did not properly inquire during the testimony as to why Plaintiff stopped taking her medication. When asked by the ALJ if Plaintiff had discontinued taking some of her medication, Plaintiff responded, "Sometimes in the past, yes because it makes me - - ." (AR 35.) Before the Plaintiff could finish her sentence, the ALJ asked a follow up question unrelated to Plaintiff's reasons for not taking her medication. Moreover, Plaintiff testified that, at the time of the interview, she was taking her medication because when she stopped, she became suicidal. (AR 35.)

Accordingly, the ALJ did not adequately consider Plaintiff's reasons for stopping her medication in the past, and did not consider Plaintiff's testimony regarding her symptoms when she was not taking her medication.

### *(d)   Objective Medical Evidence*

The ALJ determined that Plaintiff's allegations regarding the severity of her symptoms were "greater than expected in light of the objective medical evidence." (AR 21.) Even if this is true, "[t]he fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." <u>Vertigan</u>, 260 F.3d at 1049. As discussed above, the ALJ's other reasons for discrediting Plaintiff's testimony are invalid.

### 3.   Clear and Convincing Reasons

The Court finds that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony. The record does not clearly indicate that Plaintiff attended college in-person after the alleged onset date, and taking online courses does not provide the same type of facts that the ALJ relied upon in finding that Plaintiff's daily activities are transferable to employment. Moreover, the ALJ did not allow Plaintiff to explain why she stopped taking medication, nor did the ALJ take into consideration Plaintiff's testimony regarding the severity of her

//

symptoms when she is off medication. Therefore, the ALJ erred in rejection Plaintiff's symptom testimony.

**B.    Remand**

Under the "ordinary remand rule," when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985). Departure from the ordinary remand rule may be permissible under the "credit-as-true" rule set forth in Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396 (9th Cir. 1988).

The Ninth Circuit has developed a three-part credit-as-true standard, each part of which must be satisfied before a court can remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014). Even when all three elements are satisfied, raising the "rare circumstances" that would allow departure from the ordinary remand rule, the decision whether to remand for further proceedings or just award benefits rests within the discretion of the court. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101-02 (9th Cir. 2014).

As discussed above, the record is unclear as to whether or not Plaintiff attended college after the alleged onset date. Moreover, the ALJ did not properly inquire as to Plaintiff's reasons for not taking her prescribed medications.

Therefore, further administrative proceedings would be useful, and remand is appropriate.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment (ECF No. 11) is **GRANTED** and Defendant's motion for summary judgment (ECF No. 14) is **DENIED**. The Commissioner's decision is **VACATED** and this matter is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: December 30, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court